Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3044 | **DATE** | January 20, 2004 |
| **CASE TITLE** | *Adams v. CIGNA* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court DENIES Defendants' Motion to Dismiss Plaintiff's Constructive Discharge Claim is DENIED [31-1 and 31-2].

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELORES ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | No. 02 C 3044 |
| CIGNA GROUP INSURANCE LIFE ) | |
| ACCIDENT DISABILITY CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Delores Adams brought this action against CIGNA Group Insurance Life Accident Disability Co. ("CIGNA"), alleging that CIGNA wrongfully terminated her long term disability benefits ("LTDB"). This matter comes before this Court on CIGNA's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is DENIED.

## BACKGROUND[1]

This action stems from a long-term disability insurance plan ("the Plan") established and funded by Adams' former employer, the AT&T Corporation ("AT&T"), and administered by CIGNA.

---

[1] The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts in Defendant's Local Rule 56.1(A)(3) statement that Plaintiff did not controvert in its Local Rule 56.1(b)(3)(A) statement are deemed admitted for purposes of this motion. Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992). Likewise, the facts that Plaintiff provides in his Local Rule 56.1 statement and that Defendant did not controvert are also deemed admitted. Id. The facts that Plaintiff objected to but did not deny are deemed admitted. McGuire v. United Parcel Serv., 152 F.3d 673, 679 (7th Cir. 1998). Lastly, responses that did not cite to "specific references to the affidavits, parts of the record, and other supporting materials relied upon" as required under Local Rule 56.1(b)(3)(A) are subject to the court's discretion as to their admission. Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997).

A.   **Relevant Policy Provisions**

At issue in this case is whether Adams was "disabled" as set forth in the Plan, and therefore entitled to LTDB. To receive benefits under the Plan, Adams was required to show that she was "unable to do any job for any employer for which [she] is qualified; or may become reasonably qualified by training, education, or experience, other than a job that pays less than 50% of [her] Eligible Base Pay at the time [she] became disabled."

B.   **Claim for Long-Term Disability Benefits**

AT&T employed Adams as a customer service representative from February 2, 1987 to December 5, 1994. On November 30, 1993, almost a year before she was terminated, Adams went on short-term disability leave, for which she received benefits from AT&T. After her short-term benefits expired, Adams completed an application for LTDB under the Plan on December 1, 1994.

Adams claimed that she qualified for LTDB because she suffered "systematic dystrophy in her right leg which led her to suffer from constant pain in her right leg and thigh." As a result of this pain, Adams contended that she was prevented from sitting, standing, or walking for long periods of time. The medication which Adams took to relieve the pain allegedly caused her drowsiness which prevented its use during work hours. Consequently, Adams asserted that she qualified for LTDB because she could not engage "in any gainful employment" at that time.

At CIGNA's request, Adams submitted medical records from her doctors. On March 23, 1995, after reviewing her medical records, CIGNA denied Adams' claim. This denial was based in large part on the fact that one of Adams' doctors, Dr. Zelkowita, stated that she could "perform work which requires no physical activity." Therefore, because her position at AT&T was "sedentary in nature," CIGNA found that Adams was not disabled as defined in the Plan.

2

## C. Appeal and Approval of Temporary LTDB

Adams subsequently appealed this denial and submitted records from another treating physician, Dr. Flimlin, medical director of the Ingalls Center for Outpatient Rehabilitation. Dr. Flimlin opined that Adams should be considered disabled until she completed a "functional restoration program." After reviewing her claim, a CIGNA claims representative found that: (1) Adams had been "diagnosed with chronic pain syndrome"; (2) "various treatments . . . have been tried [over] three years, but with no real improvement in [Adams'] symptoms"; and (3) the doctors, "who have attempted to diagnose and treat" Adams, "feel [her] pain is real." Based on this information, the claims representative stated that CIGNA "should approve this claim." CIGNA subsequently approved her claim and granted Adams LTDB on a preliminary basis.

## D. Termination of LTDB

To make a final determination of her claim, CIGNA scheduled Adams to take a functional capacities evaluation ("FCE"), so that an occupational specialist could make a more definite determination as to whether she qualified for LTDB under the Plan. Adams subsequently underwent two separate FCEs, one by her own doctor, Dr. Flimlin, and one by an independent occupational therapist. A FCE measures a person's physical capacity to perform various types of jobs. Based on the result of the FCE, Dr. Flimlin opined that Adams would be able to return to "light or medium work." Likewise, the occupational therapist concluded that Adams could perform light to medium work. CIGNA also had Adams perform a "transferable skills study," which identified occupations which she could perform based on her physical limitations, work experience, and education. According to this study, Adams could work at a number of occupations given her physical condition.

Consequently, on November 18, 1996, based on the results of the two FCEs and the transferable skill study test, CIGNA notified Adams that it was terminating her LTDB under the Plan because she no longer met the Plan's definition of disabled.

### E. Appeal of the Termination of LTDB

In response to the termination of her benefits, Adams filed several appeals with CIGNA. In her first appeal, Adams submitted reports from three doctors, including a report from Dr. Flimlin stating that Adams' "pain [was reported by her to be] intolerable" and that her condition had deteriorated. CIGNA, however, denied this appeal because the three doctors' reports did not contradict their earlier findings that Adams could perform "light-medium work" and did not contain clinical evidence in support of their medical conclusions.

Adams subsequently filed a second appeal with a report from Dr. Flimlin. In her updated report, Dr. Flimlin noted that Adams continued to suffer a "significant exacerbation of pain" and is now taking several medications which make her drowsy and unable to "attend task." Based on this, Dr. Flimlin stated that Adams "is unable to participate in a light duty sedentary job" and "strongly recommend[s] a permanent disability for neuropathic pain."

In addition to Dr. Flimlin's updated report, Adams sent CIGNA a decision from the Social Security Administration ("SSA"), on June 5, 1997, finding that she was disabled as defined by the Social Security Act and awarding her disability benefits. The SSA found that Adams suffered "severe . . . pain in the right lower extremity and depression" which "prevent[s] [her] from performing even sedentary unskilled work." This conclusion, according to the SSA, is supported by the fact that Adams' "pain is documented through voluminous medical records over the years from numerous treating sources."

Despite Dr. Flimlin's new opinion and the decision of the SSA, CIGNA denied Adams

appeal on the grounds that Dr. Flimlin did not submit any clinical evidence to support her new opinion. The SSA's award of benefits was apparently not considered by CIGNA because it was not mentioned in the denial of her appeal.

After the denial of her second appeal, Adams submitted another letter from Dr. Flimlin, who again examined Adams in May of 1998. In this report, the doctor stated that Adams reported a "significant exacerbation of right lower extremity pain and a new left lower extremity pain" and difficulty sleeping and performing simple tasks. After performing a "musculoskeletal exam," Dr. Flimlin found that Adams' "right lower extremity is swollen" and that she had a loss of strength there. She also concluded that Adams "was unable to go up on the toes or heel on the right" and that "[s]he had difficulty sitting in one position for greater than 2 minutes, needed to change position from sitting to standing." Based on her exam of Adams, Dr. Flimlin stated that:

> My assessment is this patient has had an acute exacerbation of a chronic right lower extremity pain. I do not feel that she could tolerate a light duty sedentary job, as she is unable to tolerate sitting for greater than 2 minutes or standing. With a neuro exam, she could recall 1 of 3 objects immediately. I feel that she is also having difficulty sleeping and emotionally distraught . . . . I do not feel that she can participate in a sedentary light duty job and her clinical exam today has significantly deteriorated since my last office visit.

To determine the validity of Dr. Flimlin's new diagnosis, CIGNA sent Adams medical records to Dr. Franz. In contrast to Dr. Flimlin, Dr. Franz concluded that Adams was not suffering from sympathetic pain syndrome and was capable of performing "light to sedentary duties." Dr. Franz based his opinion solely on the fact that Adams did not respond to a "sympathetic blockade even temporarily," which was a test performed by Dr. Carobene in June of 1995. Consequently, following the opinion of Dr. Franz, CIGNA once again denied Adams' LTDB claim.

### F. Procedural History

After CIGNA denied her final appeal, Adams filed the instant action in the Circuit Court of Cook County on March 15, 2002, alleging that CIGNA "negligently, willfully and wrongfully terminated the contractual rights of this Plaintiff." CIGNA subsequently removed the case to the United States District Court of the Northern District of Illinois, Eastern Division based on 28 U.S.C. §§ 1441 and 1446 because Adams' complaint invokes federal question jurisdiction, a violation of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132(a)(1)(B)), and then moved for summary judgment.

## STANDARD OF REVIEW

Because this is a motion for summary judgment for a claim for wrongful denial of benefits under ERISA, two standards of review govern this Court's review.

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A genuine issue of material fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must construe the alleged facts in a light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Dale v. Chicago Tribune Co., 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of

material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Cop., 475 U.S. 574, 586 (1986). The nonmoving party may not merely rest upon the allegations or denials in its pleading, but instead, must "set fourth specific facts showing that there is a genuine issue for trial." See Anderson, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. Id. at 250-51 (citations omitted).

### B. Judicial Review of a Denial of ERISA Benefits

Under ERISA, de novo review of a denial of benefits is the default rule, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 538 (7th Cir. 2000). Where a plan confers such discretionary authority, a deferential arbitrary and capricious standard of review applies. Id. For decisions to be subject to this arbitrary and capricious standard, the plan must "make clear" that its administrators retain discretionary authority. Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000). In Herzberger, 205 F.3d at 331, the court suggested the following "safe harbor" language for plans that wish to avoid de novo review: "[b]enefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." See also Gerlib v. R.R. Donnelley & Sons Co., No. 95 C 7401, 2001 WL 1313794, at *6 (N.D. Ill. Oct. 26, 2001) (applying an arbitrary and capricious standard of review to a plan that gave its administrator "the

authority to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of benefits").

Here, the Plan states that CIGNA, as the claims administrator, has:

> the sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the Plan, any and all questions arising from the administration of the Plan and interpretation of all Plan provisions, determination of all questions arising from the administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to participation of Eligible Employees . . . and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable to any Eligible Employee . . . and construction of all terms of the Plan.

Because the Plan here makes clear that its administrators retain discretion to determine eligibility for benefits, the decision of CIGNA will be reviewed under the arbitrary and capricious standard.

In applying the arbitrary and capricious standard of review, courts examine whether the administrator's denial of benefits was "downright unreasonable," see Donato v. Met. Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994), and will uphold the decision as long as it was based on a reasonable interpretation of the plan's language and the evidence in the case. See Infantino v. Waste Management, Inc., 980 F. Supp. 262, 266 (N.D. Ill. 1997). Questions of judgment are left to the administrator of the plan, and "a court must be very confident that the administrator overlooked something important or seriously erred in appreciating the significance of the evidence" to overturn the administrator's determination. See Patterson v. Caterpillar, Inc., 70 F.3d 503, 505 (7th Cir. 1995).

## ANALYSIS

With the above standards in mind, the question before this Court is whether CIGNA's decision not to reinstate Adams' LTDB after receiving Dr. Flimin's updated reports and the decision of the SSA was "downright unreasonable."[2] CIGNA contends that "the evidence in this case precludes [Adams], as a matter of law, from establishing that CIGNA acted unreasonable in finding that she was not disabled from any occupation." In response, Adams appears to argue that Dr. Flimin's updated reports and the decision of the SSA present a question of fact as to whether the reasons given by CIGNA for denying Adams' appeal for reinstatement of her LTDB under the Plan were reasonable.[3]

To determine whether CIGNA's decision was "down right unreasonable," the Court will first examine the language in the Plan. To receive LTDB under the Plan, Adams was required to show that she was "unable to do any job for any employer for which [she] is qualified; or may become reasonably qualified by training, education, or experience, other than a job that pays less than 50% of [her] Eligible Base Pay at the time [she] became disabled."

Cigna contends that its decision cannot be found unreasonable because Dr. Franz's report "establishes a reasonable basis for [its] finding that [Adams] was not disabled." On November 16, 1998, after reviewing Adams' medical records but not examining Adams, Dr. Franz

---

[2] The Court agrees with CIGNA that the initial decision to terminate Adams' benefits was reasonable, and therefore, the Court will not discuss this issue. As discussed in detail above, the initial termination decision was based on the results of the two FCEs and the transferable skill study test, which concluded that Adams, at that time, could perform light to sedentary work in a number of occupations.

[3] The Court notes that Adams did not file a response to the motion but did file a Supplemental Rule 56.1 Statement of Facts, which impermissibly set forth legal arguments. Nevertheless, the Court will consider these arguments in this opinion.

9

concluded that Adams was not suffering from sympathetic pain syndrome and was capable of performing "light to sedentary duties." Consequently, this Court must examine CIGNA's decision in light of the contradictory findings of Dr. Flimlin and the SSA versus Dr. Franz's findings.

In <u>Black & Decker Disability Plan v. Nord</u>, – U.S. –, 123 S. Ct. 1965, 1967 (2003), the Supreme Court struck down the "treating physician rule," in holding that "plan administrators are not obligated to accord special deference to the opinions of treating physicians." The Court noted, however, that plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of the treating physician." <u>Id.</u> at 1972.

Consequently, in light of the Supreme Court's decision in <u>Nord</u>, it appears to this Court that "[t]he findings of treating physicians are [still] entitled to some weight," and "[i]n cases which the plan administrator rejects the findings of the claimants treating physician, the court must evaluate whether such a rejection is rational and justifiable." <u>Houston v. Provident Life and Accident Ins. Co.</u>, 2002 WL 31779921, at *6 (N.D. Ill. Dec. 11, 2002) (finding denial of LTDB arbitrary and capricious, despite finding by non-examining physician that claimant was not disabled).

Where an independent physician reviews the claimant's medical records without performing an exam, the physician's conclusions must be supported by competent medical evidence. <u>See</u> <u>Hightsue v. AIG Life Ins. Co.</u>, 135 F.3d 1144, 1148 (7th Cir. 1998). Several courts have found the denial of LTDB arbitrary and capricious, where the decision was based on a conclusion by a non-examining physician whose "opinion was based upon incomplete information" and who did not "take into account the results of relevant objective medical tests." <u>Houston</u>, 2002 WL 31779921, at *7. <u>See also Carugati v. Long Term Disability Plan for Salaried</u>

Employees, 2002 WL 441479, at *6 (N.D. Ill. Mar. 21, 2002) (finding denial of LTDB arbitrary and capricious, where decision was based on conclusion by non-examining physician who did not examine the entire medical record and discounted relevant medical evidence).

Here, after reviewing the entire administrative record, this Court finds a number of problems with CIGNA's reliance on Dr. Franz's conclusion. First and foremost, the Court notes that Dr. Franz, who completed his review on November 16, 1998, based his opinion entirely on the fact that Adams did not respond to a "sympathetic blockade even temporarily," which was a test performed by Dr. Carobene in June of 1995. The problem with relying on Dr. Carobene's exam is that it was conducted in June of 1995, well before Dr. Flimin's updated reports, in October 1997 and May 1998, and the decision of the SSA, in June of 1997. Dr. Franz's report states that he obtained the reports from Dr. Flimin. In his report, however, Dr. Franz did not even discuss Dr. Flimlin's October 1997 and May 1998 reports, let alone address whether they were valid. As for the SSA report, it is not even mentioned in Dr. Franz's report.

As discussed in detail above, in his May 1998 report, after administering a "musculoskeletal exam," Dr. Flimlin found that: (1) Adams' condition had significantly worsened; (2) her "right lower extremity is swollen"; (3) she had a loss of strength as demonstrated by the fact that she "was unable to go up on the toes or heel on the right"; and (4) "[s]he had difficulty sitting in one position for greater than 2 minutes, needed to change position from sitting to standing." Based on her exam of Adams, Dr. Flimlin opined that Adams "had an acute exacerbation of a chronic right lower extremity pain" and that she "could not tolerate a light duty sedentary job, as she is unable to tolerate sitting for greater than 2 minutes or standing."

Similarly, on June 5, 1997, the SSA found that Adams suffered "severe . . . pain in the

11

right lower extremity and depression" which "prevent [her] from performing even sedentary unskilled work." This conclusion, according to the SSA, is supported by the fact that Adams' "pain is documented throughout voluminous medical records over the years from numerous treating sources."

CIGNA contends that this Court should not consider Dr. Flimlin's report or the decision of the SSA. According to CIGNA, Dr. Flimlin's opinion that Adam's condition had worsened was "not supported by clinical evidence" and did not explain "how" her condition had changed. While this might be true for the October 1997 report, as explained above, Dr. Flimlin's May 1998 report was based on a "musculoskeletal exam" and her long-time experience treating Adams' condition.[4] As for how her condition changed, this would seem irrelevant so long as it was the original condition for which she was denied benefits. A number of courts have found claimants to be disabled where their conditions had worsened over time, without the examining physicians explaining precisely how the condition worsened. See, e.g., Ladd v. IIT Corp., 148 F.3d 753, 754 (7th Cir. 1998); Poulos v. Motorola Long Term Disability Plan, 93 F. Supp. 2d 926, 931 (N.D. Ill. 2000). Moreover, Dr. Flimin opined that, based on his exam, Adam's changed condition was the result of "an acute exacerbation of a chronic right lower extremity pain." In this Court's view, this finding seems to explain how and why Adams' condition changed for the worse.

CIGNA also contends that Dr. Flimlin's report and the SSA's decision are irrelevant because Adam's "benefits were terminated effective November 1996." CIGNA bases this

---

[4] A "clinical diagnosis" is defined as "[t]he determination of a medical condition (such as a disease) by physical examination or by a study of its symptoms." Black's Law Dictionary 464 (7th ed. 1999). Here, despite CIGNA's assertion, Dr. Flimlin's opinion based on his "musculoskeletal exam" of Adams appears to be a clinical diagnosis.

12

contention on the fact the Plan states that benefits expire when the participant recovers. While this might be true, there is nothing in the record to show that Adams ever recovered from her malady. Rather, the medical opinions which led CIGNA to terminate her LTDB simply found that she could perform light to sedentary work, not that she had recovered from the ailment in her right extremity. Moreover, a number of courts have found that a claimant became disabled after her condition worsened, when at first she was found not to be totally disabled. See, e.g., Ladd, 148 F.3d at 754; Poulos, 93 F. Supp. 2d at 931. Therefore, the Court finds this contention unavailing.

Additionally, CIGNA contends that the SSA's decision was irrelevant to its decision because "ERISA does not require the claim administrator to follow the SSA's disability determination." While it is true that CIGNA did not need to follow the decision of the SSA, it does not appear that CIGNA even considered it or that it gave it to Dr. Franz in his examination of the medical records. As such, this Court finds that CIGNA's decision was not based on a complete review if the record. See, e.g., Coles v. LaSalle Partners Inc. Disability Plan, 2003 WL 22400710, at * 3-5 (N.D. Ill. Oct. 17, 2003).

Consequently, based on the fact that Dr. Franz based his report on a dated test conducted by another physician and failed to take into consideration or discuss Dr. Flimlin's May 1998 report or the SSA's determination, this Court finds that a genuine issue of material fact exists as to whether the reasons given by CIGNA for denying Adams' appeal for reinstatement of her LTDB under the Plan were " downright unreasonable." As such, even under the "arbitrary and capricious" standard, this Court cannot at this time grant CIGNA's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, this Court DENIES Defendant CIGNA Group Insurance Life Accident Disability Co.'s Motion for Summary Judgment [12-1].

ENTER:

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 1-20-04